**E-FILED**
Monday, 07 March, 2016  01:27:35 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| CARL GALLO, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   13-cv-1476 |
| | ) | |
| LORNA PITCH-STOKES, | ) | |
| | ) | |
| Defendant. | ) | |

# <u>O R D E R & OPINION</u>

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 28) and Plaintiff's Motion to Strike Defendant's Reply Brief in Support her Motion for Summary Judgment. (Doc. 33). For the reasons discussed below, Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. Plaintiff's Motion to Strike is DENIED.

### PROCEDURAL BACKGROUND

Plaintiff Carl Gallo, Jr. ("Plaintiff") filed his complaint on October 8, 2013 (Doc. 1), in which he sued ten defendants at the Henry Hill Correctional Center ("Hill") for violating his constitutional rights based on disciplinary tickets written against him on November 9, 2011 and December 16, 2011. In a Merit Review Opinion dated July 9, 2014, the Court dismissed all Defendants except for Defendant Lorna Pitch-Stokes ("Defendant") and dismissed all claims except for the claim that Defendant retaliated against him for filing grievances by writing false disciplinary tickets on November 9, 2011 and December 1, 2011. (Doc. 7). The Court

denied Plaintiff's Motion for Reconsideration of its Merit Review Order, and the case proceeded through discovery. Defendant now moves for summary judgment on Plaintiff's retaliation claim.

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant. *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011).

To survive summary judgment, the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." *Warsco v. Preferred Technical Grp.*, 258 F.3d 557, 563 (7th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

2

## FACTUAL BACKGROUND[1]

Plaintiff is an inmate who is currently incarcerated with the Illinois Department of Corrections ("IDOC") at Hill. He has a history of various health ailments for which he says he has had difficulty receiving medical treatment. When Plaintiff believes he has not received the health care that he requires, he has filed grievances against prison healthcare staff.

In November and December of 2011, Plaintiff filed grievances against Defendant. She is a licensed practical nurse who is registered to practice in the State of Illinois, and has been employed at Hill since 2006. At Hill, she performs nursing care duties under the supervision of the Medical Director and Director of Nursing. Defendant filed disciplinary reports against Plaintiff in the days after he filed each grievance. In this lawsuit, Plaintiff claims that Defendant filed the disciplinary reports in retaliation for his grievances.

### I.   Plaintiff's First Grievance & Subsequent Disciplinary Ticket

Plaintiff filed his November 2011 grievance following an October 27, 2011 nursing sick call in which he received treatment from Defendant.  Plaintiff suffers from ulcerative colitis, and he uses Metamucil to help treat it.  At the sick call, Plaintiff informed Defendant that he believed his Metamucil prescription had been improperly written. During their discussion, he told her, "you're not a doctor."[2]

---

[1]   Unless otherwise indicated, these background facts reflect the Court's determination of the undisputed facts, and are drawn from the parties' statements of facts and responses thereto. (Docs. 28, 31).

[2]   Plaintiff has objected to a number of Defendant's undisputed material facts as not supported by the record evidence to which Defendant cites, including this one. These improperly cited facts include Plaintiff's proposed undisputed material facts 7, 9, 30, 34, and 36. (*See* Doc. 31 at 3-8).  In making these objections, Plaintiff

Although Plaintiff insists that he behaved politely toward Defendant throughout

the sick call and left without incident, Defendant claims that he was insolent during

---

has highlighted Defendant's inattention to record citations. In many of the proposed undisputed material facts identified above, Defendant has cited to portions of Plaintiff's deposition transcript, but the cited portions of the deposition have nothing to do with the proposition for which Defendant has cited it. This is one such example. Defendant cites to Plaintiff's deposition testimony, but the cited testimony does not support the fact that Plaintiff told Defendant, "you're not a doctor." (Doc. 28 at 3). Yet, in his declaration filed with his response to Defendant's motion, Plaintiff himself admits that he made the statement. (Pl.'s Decl. 1 (Doc. 31 at 26)). Here's an additional example that is relevant to facts discussed later in this opinion. Defendant cites page 40 of Plaintiff's deposition to support the proposition that the Adjustment Committee disciplined Plaintiff with a verbal reprimand after finding him guilty of insolence in November of 2011. (Doc. 28 at 6). Yet, the cited portion of the transcript says nothing about Plaintiff's punishment for the insolence. Instead, it relates to Plaintiff's daily schedule at Hill. (*See* Pl.'s Dep. 40-41 (Doc. 28-1 at 10-11)).

Defendant's failures are frustrating, but Plaintiff's objections are overruled. Parties have an obligation to support their assertions of fact with properly-cited evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Plaintiff's objections are made pursuant to Federal Rule of Civil Procedure 56(c)(2), which provides that, "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." But, pursuant to Rule 56, the Court "may consider other materials in the record" beyond those that are cited. Fed. R. Civ. P. 56(c)(3).

Although a number of Defendant's record citations are either imprecise or incorrect, the record contains evidence that supports many of the facts to which Plaintiff objects. To continue with the second example from above, even though Plaintiff did not testify during his deposition about the verbal warning he received, a quick review of the record demonstrates that Defendant has submitted evidence of this fact that could be presented in a form that would be admissible in evidence at trial. The Adjustment Committee Final Summary Report lists Plaintiff's final punishment related to this disciplinary report as a verbal reprimand. (Pl.'s Dep. Ex. 2 (Doc. 28-2 at 13)). Plaintiff does not dispute the authenticity or admissibility of this document; indeed he relies upon it to support certain of his own facts. (*See, e.g.,* Pl.'s Disputed Material Fact 58, Doc. 31 at 13). Moreover, he does not actually dispute that he received this punishment or provide evidence that he received some other punishment. Instead, he argues that he was harmed by the risk of significant sanctions rather than by the actual sanction he received. (Doc. 31 at 20-21).

The Court has carefully reviewed each of the objections that Plaintiff has made pursuant to Rule 56(c)(2). To the extent that Defendant's facts are both undisputed and supported by the record, the Court will overrule Plaintiff's objections and consider the evidence despite Defendant's citation problems. Defendant should be more careful in the future.

it.  Defendant purportedly told Plaintiff during the sick call that she would write him a disciplinary report next time he wrote a grievance about her.

Plaintiff wrote a grievance on November 2, 2011, and detailed Defendant's threat to write a disciplinary ticket if he filed a grievance. He marked this grievance as an emergency grievance, and submitted it to the Hill's warden on November 5, 2011. Emergency grievances are sent directly to the warden's office, and the warden's office determines whether an emergency exists. The warden's office does not investigate the allegations of the grievance during this review.[3]

On November 7, 2011, the warden determined that Plaintiff's grievance did not constitute an emergency and returned the grievance to Petitioner. Plaintiff then submitted his grievance to his counselor, who received it on November 14, 2011 and forwarded it to the healthcare unit (where Defendant is employed) for a response. Plaintiff's counselor responded to the grievance on November 16, 2011, and wrote, "HCU Administrator states that the nurse was following policies and procedures. Your continued harassment – your continued false grievances are inappropriate." (Beams Aff. Ex. 1 (Doc. 28-6 at 4)).

While the warden's office was determining if the grievance was an emergency, Plaintiff submitted a new sick call request slip to the Health Care

---

[3]  Plaintiff objects to this fact on the ground that Gary Beams, a Counselor at Hill who provided an affidavit, lacks personal knowledge of what the warden's office does with emergency grievances because he is not employed by the warden's office. However, Plaintiff has not presented any evidence that would call this fact into dispute. Beams's affidavit states that his experience as a correctional counselor at Hill has left him "familiar with the processing and investigating of grievances, both regular and emergency." (Beams Aff. 1 (Doc. 28-6 at 1)). This provides the necessary foundation to establish his personal knowledge as to how the grievance process at Hill works. *See* Fed. R. Evid. 602. Therefore, the Court overrules Plaintiff's objection.

5

Administrator. The request was dated November 8, 2011. On it, Plaintiff complained of chest and kidney pain, stated that he needed to see the doctor, and further stated that he had been putting in requests for a doctor since November 4. It turns out that Plaintiff actually saw a doctor on November 7, although Plaintiff argues that he saw the doctor exclusively for reasons that are unrelated to his sick call requests. Additionally, Plaintiff states that he submitted his sick call request on November 8, 2011 because the doctor was "of no help to [him]" at the November 7, 2011 visit. (Pl.'s Decl. 3 (Doc. 31 at 28)).

Defendant received and reviewed Plaintiff's sick call request on November 9, 2011. In response, she spoke with a doctor and obtained approval to renew two prescriptions for Plaintiff. She also wrote Plaintiff a disciplinary ticket on November 9. The disciplinary ticket charged Plaintiff with giving false information to an employee, insolence, and disobeying a direct order. Defendant wrote, among other things, that Plaintiff had provided false information when he submitted the November 8 sick call request claiming he had needed to see a doctor since November 4 because he had seen a doctor on November 7. Defendant also wrote that Plaintiff had behaved in an insolent manner on October 27 when he told her that she was not a doctor.

An adjustment committee at Hill had a hearing regarding the disciplinary ticket, and found Plaintiff guilty of insolence based upon his behavior on October 27,

2011.[4] During the hearing, Plaintiff admitted that he had told Defendant that she was not a doctor. As a punishment, he received a verbal reprimand.

## II.    Plaintiff's Second Grievance & Subsequent Disciplinary Ticket

Plaintiff submitted a second grievance against Defendant on December 12, 2011, in which he complained that she was not addressing his medical problems. Plaintiff's counselor received the grievance on December 15, 2011, and investigated it by contacting the healthcare unit.

Plaintiff also submitted a sick call request on December 16, 2011. In this sick call request, he complained that he had not received necessary medication or medical treatment.  Prison security staff conducted a shakedown of Plaintiff's cell on December 16, 2011. During the shakedown, the staff located a number of medications, many of which were expired. Although Defendant did not have any involvement in ordering the shakedown of Plaintiff's cell and was not present during the search, she received the confiscated medications that were located during the search.

Upon receipt of the confiscated medications, Defendant wrote Plaintiff a disciplinary ticket on December 16 charging Plaintiff with violation of three prison rules: (1) he was in possession of drugs or drug paraphernalia because he had expired medications;[5] (2) he provided false information to an employee by claiming that he had not received medication; and (3) he was insolent, as he acted with

---

[4] A prisoner violates the IDOC Offense 304, for insolence, by "[t]alking, touching, gesturing, or other behavior that harasses, annoys, or shows disrespect." Ill. Admin. Code tit. 20, § 504 App. A.

[5] A prisoner violates the IDOC Offense 203 when he "possess[es] . . . . unauthorized amounts of prescribed medication." Ill. Admin. Code tit. 20,  § 504, App. A.

hostility and disrespect toward Defendant. In describing the behavior that she believed was insolent, Defendant referenced Plaintiff's behavior on October 27, 2011 (for which she had written a previous disciplinary report) and also noted that Plaintiff had "yelled at [her] in passing, despite being told to stop by both [her]self and correctional staff." (Stokes Decl. 3 (Doc. 28-5 at 3)).

The adjustment committee conducted a hearing on the charges, and found Plaintiff guilty of the drug and insolence charges.  The committee found that Plaintiff had admitted to having medicine in his cell that was expired. It also found that he was insolent during the October 27, 2011 sick call, during which he refused to leave the exam room and "leaned forward in his chair with his arms on top of his thighs and stared at [Defendant]." (Pl.'s Dep. Ex. 4 (Doc. 28-4 at 2)).  Based on its finding that Plaintiff possessed expired medication, the Adjustment Committee disciplined Plaintiff with a six-month contact visit restriction and one-month of C-grade status.

Plaintiff challenges Defendant's motivation for writing the disciplinary report. He argues that most (but not all) of the expired medication that was found in his cell, including the hydrocortisone cream, eye drops, Tylenol, and Advil, are not prescription drugs and are in fact sold in the Inmate Commissary. And in his declaration, he states that on later occasions Defendant told him he did not need to worry about possessing expired medication and could use expired medication rather than refilling his prescriptions. (Pl.'s Decl. 7 (Doc. 31 at 32)).

### DISCUSSION

Plaintiff claims that Defendant retaliated against him for engaging in speech protected under the First Amendment in violation of 42 U.S.C. § 1983 by filing disciplinary reports against him after he filed grievances against her. To make a prima facie First Amendment Retaliation claim, a plaintiff must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) his speech was at least a motivating factor in the defendant's actions. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012). To ultimately prevail, however, a plaintiff must demonstrate that "but for his protected speech, [the defendant] would not have taken the adverse action." *Id.* at 965. At summary judgment, the Seventh Circuit has split the burden of proof on causation between the parties. The defendant can rebut the plaintiff's prima facie case of causation by providing evidence that the challenged adverse action would have occurred regardless of the plaintiff's protected speech. *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011). If the defendant produces this evidence, the plaintiff must "show that those reasons were pretextual." *Swearnigen-El v. Cook Cty. Sheriff's Dep't*, 602 F.3d 852, 861 (7th Cir. 2010).

In this motion, Defendant does not challenge the first prong of the prima facie case. Instead, she argues that Plaintiff's retaliation claim regarding the November 2011 disciplinary ticket must fail because he did not suffer an adverse action and he cannot prove causation. She argues that Plaintiff's retaliation claim regarding the December 2011 disciplinary ticket must fail because he cannot prove

9

causation. Finally, she argues that she is entitled to qualified immunity. The Court concludes that Defendant is entitled to judgment on Plaintiff's retaliation claim based on the November 2011 disciplinary ticket, but is not entitled to judgment on Plaintiff's retaliation claim based on the December 2011 disciplinary ticket.

## I.     November 2011 Disciplinary Ticket

With respect to the November 2011 disciplinary ticket, Defendant argues that Plaintiff has not presented evidence that satisfies the prima facie case for First Amendment retaliation. First, she argues that Plaintiff cannot present evidence that she knew about his filed grievance when she wrote him the disciplinary ticket. Second, she argues that Plaintiff cannot prove that he suffered an adverse action, as the adjustment committee disciplined him with only a verbal warning. Although Plaintiff has presented evidence from which a reasonable factfinder could infer that Defendant had knowledge of the grievance when she wrote the disciplinary ticket, the punishment the disciplinary committee gave Plaintiff was not sufficiently adverse.

### A. Causation

Defendant argues that Plaintiff has no evidence that she became aware of the grievance before November 16, 2011, when Plaintiff's counselor forwarded the grievance to the health care unit. To survive summary judgment, Plaintiff must present evidence that she knew of the grievance before she wrote the complained-of disciplinary ticket on November 9, 2011.

A plaintiff can show that an adverse action was motivated by protected speech when the adverse action follows "closely on the heels" of the protected

10

activity. *Kidwell*, 679 F.3d at 971. But, "[a]dverse actions that follow 'close on the heels' of protected speech can give rise to an inference of retaliation . . . only if the person taking the adverse action knew of the protected conduct." *Diadenko v. Folino*, 741 F.3d 751, 756 (7th Cir. 2013); *see also Morfin v. City of E. Chi.*, 349 F.3d 989, 1005 (7th Cir. 2003) ("The protected conduct cannot be proven to motivate retaliation if there is no evidence that the defendants knew of the protected activity.") (internal quotation marks and brackets omitted).

In this case, there is close temporal proximity between the protected activity and alleged adverse action. Plaintiff filed a grievance on November 5, 2011 which was evaluated by the warden's office on November 7, 2011, and Defendant issued the disciplinary ticket two days later, on November 9, 2011. *See Kidwell*, 679 F.3d at 966-67 (explaining that a Plaintiff can show causal connection through temporal proximity when "no more than a few days" have elapsed "between the protected activity and the adverse action.").

However, Plaintiff does not have any direct evidence that Defendant was aware of his grievance at the time that she filed the disciplinary report. In fact, he attempts to dispute Defendant's claim that she lacked knowledge through rank speculation, writing "somebody screened the grievance to see if it qualifies as an emergency . . . [and] this person could [have] contacted the defendant or even informed one of her co-workers." (Doc. 31 at 11). This speculation, on its own, is not sufficient to survive summary judgment. *See Harris v. Illinois*, No. 09 C 3071, 2014 WL 2766737, at *13 (N.D. Ill. June 18, 2004); *West v. Kingsland*, No. 14-CV-1146-JPS, 2015 WL 7283131, at *8 (E.D. Wis. Nov. 17, 2015).

Despite Plaintiff's explicit turn to speculation in an attempt to meet his burden, the record does contain circumstantial evidence from which a factfinder could reasonably infer that Defendant knew about the grievance. *See Santiago v. Anderson*, No. 05-512-CV-MJR-CJP, 2010 WL 4457334, at *4 (S.D. Ill. Nov. 1, 2010) ("A jury must weigh Defendants' assertions of a lack of knowledge against Santiago's assertions and circumstantial evidence"); *Chavez-Rodrigeuz v. City of Santa Fe*, 616 F. Supp. 2d 1145, 1152 (D.N.M. 2009), *rev'd on other grounds*, 596 F.3d 708 (10th Cir. 2010) (providing that circumstantial evidence such as temporal proximity, animus, and other potential facts, can provide evidence of knowledge in a First Amendment retaliation case); *cf. Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 774 (7th Cir. 2008) (explaining, in an FMLA retaliation case, that plaintiffs need only provide circumstantial evidence from which a person could conclude that defendants had knowledge of protected activity).

There is evidence that Defendant was hostile toward Plaintiff's filing of grievances, as she expressly threatened to retaliate against him if he filed one. *See Chavez-Rodriguez*, 616 F. Supp. 2d at 1145. When coupled with the fact that Defendant wrote a disciplinary ticket just days after Plaintiff filed one, this evidence could allow a fact finder to conclude that Defendant knew about Plaintiff's grievance and was making good on her threat. *See Ridings*, 537 F.3d at 774 (explaining that an adverse employment action on the heels of protected activity provides circumstantial evidence of knowledge); *Williams v. Pepsi-Cola Gen. Bottlers, Inc.*, No. 06 C 6392, 2009 WL 1974316, at *8 (N.D. Ill. July 6, 2009) (explaining, in the context of a Title VII case, that evidence of escalation by a

defendant following a protected action "can suffice to show the decision-maker knew of the complaint and retaliated."); *A. Kelley's Garage, Inc. v. Vill. of Stone Park*, No. 03 C 2758, 2005 WL 991768, at *3 (N.D. Ill. Apr. 19, 2005) (explaining that a plaintiff can prove causal connection by presenting evidence of a threat of retaliation followed by actual retaliation).

Plaintiff has also presented evidence that Defendant failed to follow IDOC policy in writing Plaintiff a disciplinary ticket. *See Hannon v. Beard*, 645 F.3d 45, 49 (1st Cir. 2011) (explaining that "deviation from standard operating procedures" can provide evidence of causal connection). IDOC has issued regulations regarding the preparation of disciplinary reports by staff, *see* Ill. Admin. Code tit. 20, § 504.30, which it is bound to follow. *See People ex rel. Yoder v. Hardy*, 451 N.E.2d 965, 969 (Ill. App. Ct. 1983). These regulations provide that disciplinary reports must be served upon adult offenders within eight days after the commission of the offense or discovery of the commission, "unless the offender is unavailable or unable to participate in the proceeding." Ill. Admin. Code tit. 20, § 504.30(f). Here, the disciplinary report that Defendant wrote on November 9, 2011 involved behavior that occurred on October 27, 2011. In order to comply with IDOC's regulations, Defendant needed to write and serve the disciplinary report by November 4, 2011, which was one day before Plaintiff filed his grievance. *See id*. Instead, she wrote the disciplinary report on November 9, 2011: thirteen days after the occurrence of the incident, but just after Plaintiff filed his grievance. A factfinder could reasonably infer that Defendant had knowledge of Plaintiff's grievance based upon the fact that

her untimely disciplinary report was not filed until after Plaintiff filed his grievance.

Considering these pieces of circumstantial evidence together (Defendant's pre-grievance threat, the close temporal proximity between the grievance and the disciplinary report, and the untimely nature of the disciplinary report), the Court concludes that Plaintiff has presented sufficient evidence of knowledge and causation to survive summary judgment on that element.

### B. Adverse Action

Defendant also argues that Plaintiff did not suffer an adverse action. To successfully make a prima facie case, Plaintiff must present evidence that he suffered a deprivation. *Kidwell*, 679 F.3d at 964. These deprivations include "both threats designed to deter future speech and penalties for past speech." *Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009). In order to be actionable, "the alleged conduct by the defendants" must "likely deter a person of ordinary firmness from continuing to engage in protected activity." *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011).

Plaintiff's claim focuses on the disciplinary report that Defendant actually filed against Plaintiff, rather than on Defendant's earlier threat to file a disciplinary report *if* Plaintiff filed a grievance. Defendant argues that the disciplinary report could not have deterred Plaintiff from filing grievances because he only received a verbal reprimand and did not lose any privileges. (Doc. 28 at 15). Plaintiff counters by arguing that the filed disciplinary report was "sufficiently adverse" because the charges contained within it subjected him to significant potential sanctions. (Doc. 31

at 19-20). For example, the maximum penalties for insolence, with which Plaintiff was charged, include three months of loss or restriction of privileges; three months of B or C grade status; one month of good time revocation; and one month of segregation. Ill. Admin. Code tit. 20, § 504 Tbl. A.

For support of his position, Plaintiff cites to a case from the Sixth Circuit, *Brown v. Crowley*, 312 F.3d 782 (6th Cir. 2002). In *Brown*, prison staff filed a major misconduct report against a prisoner for which he was subjected to the risk of sanctions including punitive segregation. *Id.* at 789. Ultimately, he was found not guilty of the charge, but the court held that "[a] reasonable jury could conclude that being subjected to the risk of such severe sanctions for raising a legitimate complaint would deter a person of ordinary firmness from continuing to engage in that protected conduct." *Id.* (internal quotation marks and brackets omitted).

*Brown*, however, is inconsistent with *Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009). In *Bridges*, a prisoner alleged that a number of officials and guards in a Wisconsin prison harassed him over a period of time because he served as a witness in a wrongful death lawsuit brought against the prison. *Id.* at 544. One of the prisoner's ancillary claims was that a defendant retaliated by filing "an unjustified disciplinary charge" when he complained about the harassment. *Id.* at 555. The disciplinary charge was subsequently dismissed. *Id.* The Seventh Circuit upheld the district court's dismissal of that ancillary claim, concluding "[a] single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action" because it would not "deter a person of ordinary firmness from exercising First Amendment activity in the future." *Id.*; *see also Starr v. Dube*, 334

F. App'x 341, 343 (1st Cir. 2009) (holding that the simple filing of a disciplinary charge would not deter an inmate of ordinary firmness from engaging in protected speech where it is possible for the inmate to defend himself in front of a neutral tribunal.).

*Bridges* implies that courts should look to the actual consequences of a disciplinary proceeding rather than the potential consequences of a disciplinary proceeding in determining whether a prisoner would be deterred from exercising his rights under the First Amendment. *See Bridges*, 557 F.3d at 555; *Clark v. Dewitt*, No. 13-CV-3012, 2015 WL 9217141, at *2 (C.D. Ill. Dec. 17, 2015) (explaining that the statement in *Bridges* is "premised upon the fact that no actionable injury was inflicted as a result of the disciplinary charge alone."). In this case, unlike *Bridges*, Plaintiff was actually found guilty by the adjustment committee and punished with a verbal reprimand. *See* 557 F.3d at 355.   However, verbal reprimands, which carry no disciplinary consequences, are not sufficiently adverse to deter speech. *See Pegues v. Orrill*, No. 13-cv-3200, 2015 WL 1058806, at *3 (C.D. Ill. Mar. 5, 2015) (holding that a verbal reprimand given in punishment after a disciplinary report "is not adverse enough to support a retaliation claim."); *Podkulski v. Doe*, No. 11-CV-102-JL, 2012 WL 2061696, at *5 (D.N.H. May 3, 2012), *report and recommendation adopted*, No. 11-cv-102-JL, 2012 WL 2061571 (D.N.H. June 5, 2012); *Irby v. Cain*, No. CIV.A. 13-327-SDD, 2014 WL 1028675, at *6 (M.D. La. Mar. 17, 2014); *Savage v. Brown*, No. 6:10CV483, 2011 WL 294047, at *6 (E.D. Tex. Jan. 27, 2011).

This same logic also applies to Defendant's earlier threat to file a disciplinary report if Plaintiff filed a grievance. *See Surita*, 665 F.3d at 878 (applying the "person of ordinary firmness" test to prior restraints on speech). If the actual filing of a disciplinary report, on its own, is insufficient to chill First Amendment activity, *see Bridges*, 557 F.3d at 555, Defendant's bare threat to file a disciplinary report, without reference to other consequences, is also insufficient. *See Pittman v. Tucker*, 213 F. App'x 867, 871-72 (11th Cir. 2007); *Vega v. Rell*, No. 3:09-CV-737 VLB, 2011 WL 2471295, at *19 (D. Conn. June 21, 2011); *see also Hill v. Laird*, No. 06-CV-0126 JS ARL, 2014 WL 1315226, at * (E.D.N.Y. Mar. 31, 2014) (holding that a "threat to file false disciplinary reports *to keep* [a prisoner] in the SHU" was sufficiently adverse) (emphasis added).

As Plaintiff has not presented sufficient evidence that the allegedly retaliatory disciplinary report would deter an ordinary person from exercising his First Amendment rights, summary judgment is granted to Defendant with respect to the retaliation claim based on that disciplinary report.

## II.    December 2011 Disciplinary Ticket

Defendant argues that Plaintiff is unable to prove causation with respect to the claim based on the December 16, 2011 disciplinary ticket. First, she argues that Plaintiff cannot present sufficient evidence to satisfy his prima facie case. Next, she argues that she can rebut Plaintiff's prima facie case because she wrote the ticket for a legitimate, non-retaliatory reason.  Finally, she argues that she is entitled to qualified immunity. Summary judgment is inappropriate here, as Plaintiff has

presented sufficient evidence of causation and has also presented evidence that Defendant's non-retaliatory reasons are pretext for retaliation.

## A. Prima facie Case of Causation

As discussed above, Plaintiff has the burden of providing evidence that his protected conduct was a motivating factor in Defendant's adverse action.   Here, Defendant admits that there is evidence that she was aware of Plaintiff's December 12, 2011 grievance by December 15, 2011, (Doc. 28 at 13), and she did not write the ticket until the next day, when she received the medications confiscated from his cell. But she argues that Plaintiff is relying upon the "false logic of *post hoc ergo propter hoc*." (*Id*.). In other words, she suggests that the only evidence Plaintiff has that she was motivated by retaliation is the very close temporal proximity between her learning of Plaintiff's grievance and her writing the ticket.  And she suggests that this sequence of events is insufficient to suggest any kind of causal relationship between Defendant's grievance and the ticket.

Plaintiff has presented evidence of very close temporal proximity between his grievance and the disciplinary report. Although "suspicious timing alone is rarely sufficient to defeat a motion for summary judgment," *Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 736 (7th Cir. 2011), it can be in some circumstances. For example, in *Mays v. Springborn*, 575 F.3d 643, 650 (7th Cir. 2009), an inmate who was onerously strip searched "almost immediately after making [a] protected complaint about strip searches" presented evidence of causation through chronology.  Here, Defendant filed the disciplinary report closely on the heels of learning of Plaintiff's protected activity. *See Kidwell*, 679 F.3d at 971; *Mays*, 575

F.3d at 650. This one-day intervening period of time could ordinarily allow a jury to infer that Defendant filed the disciplinary report because of the grievance.

Defendant's intervening discovery that Plaintiff had expired medication in his cell might seem to neutralize the inference of causation based upon this temporal proximity. An inference of causation based on temporal proximity is inappropriate when "a significant intervening event separates an [individual's] protected activity from the adverse . . . action he receives." *Kidwell*, 679 at 967. Here, construing the facts in Plaintiff's favor, Defendant learned of the expired medication in Plaintiff's cell after learning that he had filed a grievance. If that is the case, Defendant's knowledge of the expired medication would be more proximate to the ticket than her learning that Plaintiff had filed a grievance.

However, reasonable jury could conclude that this intervening discovery does not negate Plaintiff's prima facie case of causation. First, as discussed below, Plaintiff has provided evidence that Defendant would not ordinarily write a ticket based on possession of expired medication. *See infra* at 21-22. Second, Plaintiff has presented evidence of animus, as he claims that Defendant threatened on October 27, 2011 to retaliate if he filed a grievance. This sort of "disparaging comment[] made about a plaintiff's protected conduct" is evidence of causation in a retaliation claim when it is followed by adverse treatment. *See Jackson v. Raemisch*, 726 F. Supp. 2d 991, 1007 (W.D. Wis. 2010); *Magyar v. St. Joseph Regional Med. Ctr.*, 544 F.3d 766, 773. (7th Cir. 2008) (holding that evidence that a defendant has a problem with a plaintiff's protected conduct is enough to raise an inference of causation). Defendant attempts to dismiss the importance of her purported threat, as it was

nearly fifty days old when she filed the disciplinary report. (Doc. 28 at 13). However, a reasonable jury could conclude that the threat was not too remote to matter. Defendant directly tied part of the December 16 disciplinary report to Plaintiff's behavior from October 27 (for which he was already charged and disciplined), as she relied upon it as one of the bases for the insolence charge. (Doc. 32 at 3).[6] Collectively, this evidence of causation – the temporal proximity between Plaintiff's grievance and the disciplinary report, the possibility that the expired medication provided a convenient pretext for writing a ticket, and Defendant's past hostility towards Plaintiff filing a grievance – is enough to survive summary judgment.

### B. Pretext

Defendant next argues that she can rebut Plaintiff's prima facie case by presenting evidence that she would have issued the disciplinary report regardless of Plaintiff's protected activity. *See Greene*, 660 F.3d at 978 (requiring but for causation in First Amendment retaliation cases, and explaining that there is no "constitutional tort such as infringing a person's freedom of speech" when "the defendant's improper motive would have done no work, had no effect, [and] left the world unchanged.").

Defendant argues that Plaintiff received the disciplinary report because he violated prison rules, as IDOC regulations clearly prohibit Plaintiff from keeping expired medication in his cell. *See* Offense No. 203, Ill. Admin. Code tit. 20, § 504,

---

[6] Plaintiff insists that the insolence charge included in the December 16 disciplinary report is baseless, as he says he had not had any contact with Defendant in over a month. (Pl.'s Decl. 5 (Doc. 31 at 30)).  In her reply brief, Defendant does not directly dispute this, but argues that she based the insolence charge on an "ongoing and [] pattern of behavior," that began with Plaintiff's behavior on October 27.

App. A (prohibiting inmates from possessing unauthorized prescription medicine). It is undisputed that Defendant had nothing to do with arranging for the shakedown of Plaintiff's cell and was not involved in the shakedown of Plaintiff's cell. All she did was receive the expired medications found in Plaintiff's cell. Moreover, it is undisputed that Plaintiff possessed certain expired medications, including hydrocortisone cream and cold pills.

A plaintiff may overcome a defendant's non-retaliatory reason for writing a disciplinary report by providing evidence that it is pretextual. *See Swearnigen-El*, 602 F.3d at 861. To demonstrate pretext at the summary judgment stage, Plaintiff "must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Zellner v. Harrick*, 639 F.3d 371, 379 (7th Cir. 2011).

Plaintiff has presented such evidence. First, he argues that many of the medications that were recovered from his cell during its shakedown and included in Defendant's ticket were available in the commissary on an over-the-counter and non-prescription basis. (Doc. 31 at 21; 37). Second, he argues that Defendant included a stale claim for "belligerent and argumentative behavior" in the disciplinary report. (*Id.* at 21). And third, he declares that since writing the disciplinary report, Defendant has told him that he shouldn't worry about refilling prescriptions or possessing expired medication because so long as the medication is "in [his] name and prescribed to [him], no one is going to say anything about it." (Pl.'s Decl. 7 (Doc. 31 at 32)). Standing alone, the fact that some of the medications that Plaintiff possessed were over-the-counter, and the fact that Defendant filed a

cumulative disciplinary report that captured some old behavior unrelated to his possession of medication are not enough to overcome the non-retaliatory reason for Plaintiff's discipline. Rather, those two facts simply suggest that Defendant was motivated by *both* her desire to retaliate and Plaintiff's failure to comply with IDOC rules. As *Greene* explains, retaliation must be a *necessary* cause for the adverse action rather than simply a *sufficient* cause.  *See* 660 F.3d at 978. However, Defendant's subsequent statements call into question her reason for writing the ticket. If true, her statement suggests that she does not view possession of properly-prescribed but expired medication as a reason for writing a disciplinary report. A reasonable jury could therefore find that Defendant's provided reason for writing the disciplinary report is a lie. *See Zellner*, 639 F.3d at 379.

### C. Qualified Immunity

Finally, Defendant argues that she is entitled to qualified immunity. Courts employ a two-part inquiry in determining whether a defendant is entitled to qualified immunity: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out  a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Williams v. City of Chi.*, 733 F.3d 749, 758 (7th Cir. 2013). As the discussion above makes clear, the facts, taken in the light most favorable to Plaintiff, make out a violation of Plaintiff's First Amendment rights. Moreover, Plaintiff's right is clearly established. *See Pearson v. Welborn*, 471 F.3d 732, 742 (7th Cir. 2006) ("[A] reasonable public official . . . would understand that retaliating against a prisoner on the basis of his complaints about prison conditions is unlawful.").

As Plaintiff has presented evidence that his grievance motivated Defendant to file a disciplinary report and has also presented evidence that the reason for filing the disciplinary report was pretextual, summary judgment with respect to the December 2011 grievance is inappropriate. At trial, Plaintiff will not be entitled to damages for mental or emotional injury. (*See* Doc. 31 at 22 (Plaintiff's concession that damages for mental and emotional injuries are unavailable)).

### III.   Motion to Strike

One last issue must be resolved. Plaintiff has moved to strike Defendant's reply brief in support of her motion for summary judgment. (Doc. 33). Plaintiff argues that Defendant's reply brief "contains false misleading statements" regarding IDOC's regulations on disciplinary reports. In that brief, Defendant argued that the IDOC regulations permit staff members to file disciplinary reports that pertain to an inmate's pattern or practice of rule violations. (Doc. 32 at 4). Under this reading, a staff member could file a report that reaches back to the very beginning of the start of the prisoner's bad behavior so long it is served within eight days of a prisoner's last rule violation. (*Id.*).   Plaintiff argues that this reading of the regulation is directly contrary to its text, which requires staff to observe offenders, write a disciplinary report for rule violations, and serve a copy of the disciplinary report within eight days of the commission of any offense. (Doc. 33 at 1-3).

Ultimately, the Court considers Defendant's assertions about the effects of the IDOC regulations to be legal arguments and not errant statements of fact. Plaintiff disagrees with Defendant's reading of the regulations, and he made his

view of the regulations clear in responding to Defendant's Motion for Summary Judgment. (Doc. 31). This disagreement is not grounds for striking the reply brief, so Plaintiff's motion is denied.

## CONCLUSION

IT IS THEREFORE ORDERED:

1. Defendant Lorna Pitch-Stoke's Motion for Summary Judgment (Doc. 28) is GRANTED IN PART and DENIED IN PART. The motion is granted with respect to Plaintiff's claim relating to the disciplinary report issued in November 2011, but denied with respect to Plaintiff's claim related to the disciplinary report issued in December 2011.

2. Plaintiff Carl Gallo, Jr.'s Motion to Strike (Doc. 33) is DENIED.

3. This matter is set for a telephonic status conference on March 23, 2016 at 1:30 p.m.  The Clerk is directed to issue a telephone writ for Plaintiff's appearance by phone.

Entered this 7th day of March, 2016.


_____
       s/Joe B. McDade
       JOE BILLY McDADE
United States Senior District Judge

24